**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRANDYWINE VILLAGE** | : | **CIVIL ACTION** |
| **ASSOCIATES,** *et al.* | : | |
| | : | |
| **v.** | : | **NO.  20-2225** |
| | : | |
| **EAST BRANDYWINE TOWNSHIP,** | : | |
| *et al.* | | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                        **September 14, 2020**

The Fourteenth Amendment requires local governments afford notice and opportunity for their community to object to their decisions and prohibits them from making decisions so unmoored to their governmental function so as to shock the conscience.  To meet this mandate in reviewing land use proposals, local governments hold noticed hearings to review plans, redraft plans to meet concerns, and make public decisions to promote a stated public purpose.  They are entitled to just compensation for taking of their land consistent with the stated public purpose.  If unhappy with the local government's decision, neighbors can sue and state courts may uphold those considered plans after adducing evidence even if the plans incidentally benefit certain landowners subordinate to the community's benefit.  Today we address disappointed neighbors alleging years of land use disputes as background to a claim a local government's 2019 post-condemnation alleged change in the use for part of condemned land violates Section 310 of Pennsylvania's Eminent Domain Code and thus so shocks the conscience as to violate their substantive due process rights.  These neighbors also complain the local government deprived them of procedural due process by failing to provide them a meaningful opportunity to be heard on this abandonment of the stated governmental purpose although they admittedly litigated this issue before the Township and in state court.  Focusing on the issues now before us but not those

on appeal in Pennsylvania courts, the neighbors have not alleged the local government's 2019 decision shocks the conscience or the local government deprived them of procedural due process. But they may possibly do so. We grant the local government's motion to dismiss the amended Complaint with leave to the neighbors to timely state a claim within our limited jurisdiction.

## I.    Facts alleged in amended Complaint

As experienced counsel confirmed in oral argument, we today address a local government's 2019 approval of a post-condemnation 2018 land development plan which allegedly changed the purpose and use of a portion of condemned land for which the local government paid just compensation. But the prolix amended Complaint tells a long tale of grievances litigated, and continuing to be litigated, in state court which offer some background albeit not central to today's holding.

East Brandywine Township rezoned farmland along Route 322 in Chester County for commercial use in the late 1980s, including an undivided tract owned by the Watters family ("the Undivided Tract").[1] John R. Cropper and his family owned a local grocery store next door to the Undivided Tract.[2] The Cropper family wanted to expand by buying half of the Undivided Tract from the Watters to develop a shopping center.[3] The Watters divided the Undivided Tract into two parcels to sell one tract to the Croppers and retain the other tract.[4] The Croppers purchased the eastern parcel and developed the Brandywine Village Property while the Watters retained the western parcel (the "Watters Property") for future development.[5] The Watters and the Croppers entered into an easement agreement over twenty years ago granting the Croppers an access easement, a sewer easement, a stormwater basin easement, and a drainage easement over portions of the Watters Property (the "Brandywine Village Easements").[6] The Township approved the Watters and Croppers's plan, and the Croppers formed Brandywine Village

Associates, L.P. to develop the shopping center built in 1995.[7]  The Watters Property and the Brandywine Village Property remained encumbered by the Brandywine Village Easements, which included an access road from the Brandywine Village Property across the Watters Property to Route 322.[8]

### *L&R Partnership buys a different plot next-door.*

Nine years later, L&R Partnership, LLC purchased property (the "L&R Property") adjacent to once-Undivided Tract.[9]  L&R began designing a residential development on its adjacent property in 2012.[10]

### *Carlino East Brandywine L.P. buys the Watters Property.*

Carlino East Brandywine L.P. purchased the Watters Property in January 2010.[11]  Carlino leased this property to Giant Supermarkets on June 1, 2010, and it sought to develop the Watters Property with a shopping center called "East Brandywine Center."[12]

East Brandywine Township wanted Carlino to build and pay for a new public road (the "Connector Road") to run through the Carlino Property, the Brandywine Village Property, and the L&R Property linking North Guthriesville Road to U.S. Route 322.[13]  To this end, the Township and Carlino agreed the Township would condemn portions of the Brandywine Village Property and the L&R Property and nullify the Brandywine Village Easements.[14]

The Township approved this plan.[15]

The Brandywine Village Associates and L&R (collectively, "Neighbors") appealed the Township's plan approval in October 2012 to the Chester County Court of Common Pleas.[16] The state court reversed the Township's plan approval because:  (a) the plan used the Neighbors' property without their consent; and (b) the plan erroneously characterized a portion of the Connector Road as a private driveway.[17]

Carlino and the Township went back to the drawing board. After two years of negotiations, Carlino and the Township entered into a "Memorandum of Understanding" under which the Township agreed to condemn land on the Brandywine Village Property and the L&R Property and approve a plan allowing Carlino to use the condemned property to construct the Connector Road.[18] The parties also agreed Carlino would indemnify the Township for all legal costs or judgment damages incurred as a result of the condemnation.[19]

Consistent with the Memorandum of Understanding, in October 2014, the Township's Board of Supervisors condemned a 0.069 acre section of the Brandywine Village Property; extinguished certain Brandywine Village Easements; and condemned a 1.93 acre section of the L&R Property to construct "a new public street between Horseshoe Pike (Route 322) and North Guthriesville Road and associated storm water facilities."[20] On November 17, 2014, the Township filed a Declaration of Taking for the seized property/easements.[21]

### The Neighbors challenge the Declaration of Taking.

In addition to fighting the plan in the development stage, the Neighbors before us raised more than fifteen preliminary objections to the taking before the Chester County Court of Common Pleas, which can be summarized into a few discrete groups: (1) the condemnation did not serve a public purpose but rather bestowed a private benefit to Carlino; (2) to the extent the condemnation did serve a public purpose, the Township condemned more land than necessary to achieve the public purpose; and, (3) the Connector Road violated Pennsylvania law or administrative regulations.[22] The Chester County Court of Common Pleas overruled the Neighbors' objections in their entirety after seven days of hearings featuring the testimony of several engineers, the Chief of Police, the Township manager and emergency management coordinator, certain township supervisors, and the president of Carlino.[23]

The Neighbors appealed the Court of Common Pleas's Order to the Pennsylvania Commonwealth Court.  On appeal, Neighbors again argued the "declaration of taking lack[ed] a public purpose and [was] excessive, procedurally flawed, and/or [was] otherwise unauthorized, illegal, or barred."[24]  On July 2, 2018, the Commonwealth Court affirmed the Common Pleas judge's overruling of the preliminary objections finding the taking served a public purpose with only incidental benefits to Carlino.[25]  Relying on the Commonwealth Court's final order, the Township paid just compensation for the condemned property and took possession of the condemned property in October 2019.[26]

### The Township approves a 2018 development plan now being challenged.

On July 2, 2018, Carlino submitted a fourth land development plan ("the 2018 Plan"),[27] which incorporated the condemned property.  Under the 2018 Plan, portions of the seized property/easements will be used, not for the Connector Road directly, but for "a stormwater management basin, a sanitary sewer line, and an underground stormwater pipe and associated outfall facilities."[28]  The Neighbors objected to the 2018 Plan in part "because it allowed Carlino to use condemned property in violation of section 310 of the Pennsylvania Eminent Domain Code."[29]

On November 7, 2018, the Township's Planning Commission approved the 2018 Plan subject to conditions.[30]  On December 6, 2018, Township Supervisors Jay G. Fischer and Kyle Scribner "authorized the Township Board's participation in the pending preliminary land development application for the 2018 Plan as a consenting fee simple landowner,"[31] and together with the Township they "authorized Carlino to use portions of the Seized Property/Easements for . . . a stormwater management basin, a sanitary sewer line and an underground stormwater pipe and associated outfall facilities from its commercial development."[32]  The Board held public

hearings on four dates from December 2018 to February 2019, and afterward the Township approved the plan on June 6, 2019.[33]

### *The Neighbors contest the 2019 partial change in use.*

The Neighbors appealed the Township's decision to the Chester County Court of Common Pleas on July 18, 2019.[34]  Carlino filed a notice of interjection.  After oral argument, the Honorable Edward Griffith of the Chester County Court of Common Pleas affirmed the Township's decision and dismissed the appeal.[35]  Judge Griffith began by detailing the lengthy history of litigation between the parties in state court, quoting the Honorable Dan Pellegrini of the Commonwealth Court describing the ongoing conflict as "a procedural slog."[36]  Judge Griffith held, among other things, the Neighbors after days of hearings adduced no evidence the Township "abandoned" the public purpose stated in the Declaration of Taking in violation of Section 310 of the Eminent Domain Code.[37]

As is their right, the Neighbors appealed this decision in part, and the appeal is currently pending in the Commonwealth Court with briefing scheduled over the next several weeks.  On July 6, 2020, the Neighbors' lawyers told the Commonwealth Court they sought to appeal, among other issues, the Township's alleged bias in favor of Carlino, the Supervisors' decision not to recuse themselves from consideration of the 2018 Plan, and the procedural impropriety of issuing a written decision summarizing the findings of fact and conclusions of law following the court's June 6, 2019 Order.[38]  Neighbors decided not to appeal Judge Griffith's denial of their argument regarding the alleged violation of Section 310 of the Eminent Domain Code in their Statement of Issues on Appeal.[39]  They instead elected to bring this issue to us.

II.     **Analysis**[40]

While arguing most of their claims in the Commonwealth Court, Neighbors then sued the Township and its Supervisors Scribner and Fischer (collectively, the "Township") in this Court alleging they conspired to, and did, violate the Neighbors' procedural due process rights under the Fifth Amendment and their substantive due process rights under the Fourteenth Amendment.[41]   The Township moves to dismiss arguing: (1) the Neighbors failed to plead an underlying constitutional violation; (2) Supervisors Fischer and Scribner are entitled to immunity; (3) the Township cannot be liable because the Neighbors do not adequately plead a *Monell* claim; and (4) Neighbors are not entitled to attorneys' fees or certain damages.[42]

We agree with the Township. The Neighbors fail to adequately plead a predicate constitutional violation arising from an alleged abandonment under Section 310 of Pennsylvania's Eminent Domain Code necessary to sustain their constitutional claims.  We dismiss the amended Complaint without prejudice.   As the Neighbors do not state a constitutional violation,[43] we do not address whether Supervisors Scribner or Fischer are entitled to immunity or whether the Neighbors, had they adequately pleaded constitutional claims, would be entitled to attorneys' fees or certain categories of damages.

A.      **We may review the narrowed claim now before us.**

The first question arising from the Neighbors litigating the same approval of the 2018 Plan in both the Pennsylvania Commonwealth Court and here is whether we must dismiss or abstain under *Younger*, *Burford*, *Colorado River*, or *Pullman*.[44]   During oral argument, the Neighbors illustrated the differences between this case and the Commonwealth Court case by conceding—despite the breadth of their allegations—the claims before us boil down to two discrete issues limited to Section 310 of Pennsylvania's Eminent Domain Code encompassed in

three concise paragraphs in their amended Complaint:  (1) whether Pennsylvania law affords Neighbors adequate procedures to seek the return of their condemned property; and (2) whether the Township violated Neighbors' substantive due process by refusing to return the condemned property to Neighbors.  Neighbors explained they plead the remaining allegations as background.

We may abstain in favor of a related state court proceeding under *Younger* when the related proceedings fall into one of "three exceptional categories": (1) "ongoing state criminal prosecutions"; (2) "certain civil enforcement proceedings"; and (3) "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions."[45] "[T]he third category of abstention-worthy disputes has been applied only to a few exceptional types of cases . . . such as child custody proceedings, civil contempt orders, and requirements for posting bonds pending appeal."[46] The state action here does not fit into any of these narrow categories, and *Younger* does not apply.

To determine whether *Colorado River* provides a basis to abstain, we must first determine "whether the two actions are 'parallel.'"[47] "If they are not, then the district court lacks the power to abstain."[48]  "Generally, cases are parallel when they involve the same parties and claims."[49] Given Neighbors' narrowing of the issues before us, the cases are not parallel.

We may abstain under *Burford* if the case presents "questions of state law in which the state has expressed a desire to establish a coherent policy with respect to a matter of substantial public concern."[50]  To trigger *Burford*, "an action must challenge a state's regulatory scheme, rather than actions taken under color of the scheme."[51]  At oral argument, Neighbors admitted they do not intend to challenge Pennsylvania's regulatory scheme, just the actions taken under the scheme.

We  may  abstain  under  *Pullman*  if  three  "exceptional  circumstances"  are  present:

(1) "there must be uncertain issues of state law underlying the federal constitutional claims"; (2) "the state law issues must be amenable to a state court interpretation which could obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim"; and (3) "an erroneous construction of state law by the federal court would disrupt important state policies."[52]   In other words, abstaining under *Pullman* "is proper when a state court determination of a question of state law might moot or change a federal constitutional issue presented in a federal court case."[53]  As the issues related to "abandonment" under Section 310 of the Eminent Domain Code are not before the Commonwealth Court, a ruling by the Commonwealth Court cannot moot the constitutional question.

Although the Neighbors inartfully split their claims in two courts, we do not see a basis for abstention or dismissal based on the Neighbors now conceding their only claim before us is one not before the Pennsylvania Commonwealth Court: whether the Township's approval of the 2018 Plan with an alleged abandonment of a stated purpose violative of Pennsylvania's Eminent Domain Code violates the Neighbors' procedural or substantive due process rights.

### B.      Neighbors have not alleged a procedural due process claim.

The Neighbors first allege the Township violated their procedural due process rights under the Fifth Amendment.  This claim is a non-starter. We dismiss the Neighbors' procedural due process claim under the Fifth Amendment "because the [D]ue [P]rocess [C]lause of the Fifth Amendment does not directly apply to actions of state officials,"[54] and "[t]he limitations of the Fifth Amendment restricts only federal government action."[55]  A procedural due process claim against municipalities or state officials, like the Township and Supervisors Scribner and Fischer, must be asserted under the Fourteenth Amendment.[56]  We dismiss the procedural due process claim without prejudice for this reason alone.

Even if the Neighbors could properly plead the correct Amendment, they fail to plead a procedural due process violation.  "The Fourteenth Amendment prohibits a state from 'depriv[ing] any person of life, liberty, or property, without due process of law.'"[57]  To state a claim for deprivation of procedural due process, the Neighbors must allege "(1) [they were] deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [them] did not provide 'due process of law.'"[58]  "[W]here a state provides a full judicial mechanism to review and challenge administrative land use decisions, the state provides adequate due process."[59]  "In the eminent domain context, the federal constitution's due process clause is satisfied so long as property owners [have] reasonable notice of and [the] opportunity to be heard before the *final* determination of judicial questions that may be involved in the condemnation proceedings."[60]

Neighbors assert only one theory as to how the Township denied them due process by abandoning the public purpose under Section 310 of the Eminent Domain Code:  Pennsylvania law does not provide a mechanism for them to seek the return of their condemned property if the Township abandons the public purpose for which it condemned the property.[61]  This theory fails.

The Neighbors allege the Township abandoned the public purpose for which they condemned their property and as such the Township must return their property under Section 310 of the Pennsylvania Eminent Domain Code.[62]  Under Section 310 of the Pennsylvania Eminent Domain Code, "[i]f a condemnor . . . abandons the purpose for which the property has been condemned, the condemnor may dispose of it," but "[i]f the property is undeveloped or has not been substantially improved," the condemnor may not dispose of the property "within ten years after condemnation" without first offering it "to the condemnee at the same price paid to the condemnee by the condemnor."[63]  The Neighbors allege the Township condemned their property

"for the construction of a new Township street" but abandoned this purpose when "the Township agreed to convey an easement for Carlino to exclusively use the condemned property" for "a sanitary sewer line," "a stormwater pipe" and "associated outfall facilities."[64]   The Neighbors argue in "chang[ing] the purpose of the condemnation and dispos[ing] of the condemned L&R land" without first offering the land back to L&R, the Township deprived L&R of its property rights.[65]   The Neighbors argue the Township deprived them of procedural due process because "Section 310 [of Pennsylvania's Eminent Domain Code] does not provide an express process by which" they can petition for the return of their abandoned property.[66]

The Neighbors' allegations do not state a procedural due process violation.   As the Township rightly pointed out during oral argument, Neighbors do not plead this claim with enough specificity to withstand a motion to dismiss.   The Neighbors never allege Pennsylvania law does not afford adequate mechanisms for a former landowner to seek return of their condemned property.   In fact, the only reference to Section 310 of the Eminent Domain Code is a passing reference to one of the many objections Neighbors raised to the 2018 Plan with no discussion as to how this statute interplays with Neighbors' constitutional rights.[67]   Neighbors' abandonment allegations appear in full form for the first time in Neighbors' opposition to the Township's motion to dismiss.[68]   As it "is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," we do not consider this argument.[69]

If Neighbors had included in their amended Complaint allegations regarding the adequacy of Pennsylvania law, we find it unlikely these allegations would be sufficient to state a procedural due process claim.   At oral argument, Neighbors struggled to articulate why exactly Pennsylvania procedures are insufficient to seek the return of the allegedly "abandoned" property.   Despite the Neighbors' contention the Eminent Domain Code does not provide an

"express process by which the abandoned property is returned to the condemnee," the Neighbors had the opportunity to raise, and in fact did raise, their abandonment argument as an objection to the 2018 Plan.  The Township considered and rejected the Neighbors' abandonment claims. Neighbors appealed the Township's decision to the Court of Common Pleas. The court rejected this same argument not for a procedural reason, but because the Neighbors adduced no evidence after several days of hearings before the state court judge of the Township "abandoning" the public purpose for which it condemned their property.[70] They had the opportunity to challenge it again in their appeal to the Commonwealth Court, but for some reason, chose not to do so. Given Neighbors have now had the opportunity in three forums to present their abandonment argument, they have been afforded "full judicial mechanisms" to review their objections to Carlino's use of the condemned land.[71]

We dismiss the Neighbors' procedural due process claim.

### C.    Neighbors do not allege a substantive due process violation.

The Neighbors allege the Township's approval of the 2018 Plan "abandoning" the stated purpose of the condemnation under Pennsylvania's Eminent Domain Code violates their substantive due process rights.  We dismiss Neighbors' substantive due process claim for several reasons.  At oral argument, Neighbors boiled down their entire substantive due process argument to:  (1) the Township abandoned the public purpose for which it condemned Neighbors' property, triggering Section 310 of the Eminent Domain Code; (2) under Section 310 of the Eminent Domain Code, the Township cannot dispose of the property without first offering it back to Neighbors; (3) the 2018 Plan effectively disposes of the land to Carlino by allowing Carlino to use the condemned land for private purposes; (4) by allowing Carlino to use the condemned land without first offering it back to Neighbors, the Township "virtually took" the

Neighbor's property; and, (5) this "virtual taking" shocks the conscience because it violates the Pennsylvania Eminent Domain Code.  This argument suffers from a myriad of flaws.

There are two broad categories of substantive due process claims: those challenging legislative action, which "apply to large segments of society", and those challenging non-legislative action, which "typically apply to one person or a limited number of persons."[72]  The alleged Township actions reviewed today are non-legislative because they affected the Neighbors only.  To state a non-legislative claim for violation of substantive due process, a plaintiff must identify a property interest to which the Fourteenth Amendment's due process protection applies"[73] and must allege the government deprived them of the alleged interest through an "arbitrary and capricious act."[74]  "[G]overnment action violates substantive due process rights only when it 'shocks the conscience'."[75]  "'[O]nly the most egregious official conduct' violates substantive due process."[76]  A government action motivated by an "improper purpose" or taken in bad faith does not necessarily "shock the conscience"; rather, the action must bear no reasonable relation to legitimate government objectives.[77]

In the land use context, official conduct "shocks the conscience" only where the conduct is the product of "corruption or self-dealing, bias against an ethnic group, interference with constitutionally protected activity or a virtual 'taking' of property."[78]  Neighbors do not meet this high bar to plead a substantive due process violation.

To find the Township pleaded a substantive due process violation, we would necessarily need to find the Township abandoned the public purpose for which it condemned the land.  After several days of hearings, the Court of Common Pleas already ruled "there is no evidence to support" a "claim that the Township has abandoned the purpose for which it acquired the Condemned Property."[79]

In other words, Neighbors ask us to "sit in direct review of [a] state court decision" and reverse a Pennsylvania court's application of its own law.  We cannot do so under the *Rooker-Feldman* doctrine.  Our Court of Appeals has held, "there are four requirements that must be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff 'complains of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."[80]   This case satisfies all four factors.  Neighbors presented this exact argument to the Court of Common Pleas and lost on April 16, 2020—one month before they filed this case.[81]   Neighbors invite us to review and reject the Court of Common Pleas's ruling to resolve their alleged injuries here.  As the Supreme Court has stated, "[t]his the district court may not do."[82]

Neighbors also have not alleged the Township deprived them of a constitutionally protected property interest.  Neighbors have not clearly articulated the exact nature of the property interest at issue.  While the Neighbors undoubtedly have a constitutionally protected interest in real property they own, the Neighbors do not have an ownership interest in the condemned land. [83]  The Township condemned the land under a Declaration of Taking, which the Commonwealth Court determined to be a lawful taking under the Pennsylvania Eminent Domain Code.[84]  Neighbors admit the Township paid just compensation for the land. [85]  Any ownership interest Neighbors had is extinguished.

Construing the amended Complaint in the light most favorable to the Neighbors, we infer Neighbors are arguing they have a constitutionally protected interest in their expectancy of an offer to re-purchase the land from the Township in the event the Township first abandons the public purpose and then seeks to dispose of the land within ten years of the condemnation under

Section 310 of the Eminent Domain Code.   In other contexts, courts have held a party's expectancy in a constitutionally protected interest may give rise to procedural due process protection if the expectancy is not "mere[ly] subjective," but rather comes from a policy, practice or statute.[86]   For Neighbors' expectancy in an offer to repurchase the property to arise under Section 310 of the Eminent Domain Code, several conditions must exist:   (1) the Township cannot have improved the property; (2) the Township must abandon the public purpose; (3) the Township must seek to dispose of the land; and (4) fewer than ten years must have elapsed since the condemnation.[87]   As discussed above, a Pennsylvania court has already ruled one of triggering events—the Township's abandonment of the public purpose—has not occurred.[88] Also Neighbors concede the Township transferred the condemned land, not to Carlino, but to PennDOT.[89]   As the conditions precedent for Neighbors' expectancy to arise have not occurred, we cannot find the Township deprived Neighbors of a constitutionally protected interest in this expectancy.

But even assuming Neighbors pleaded the Township deprived them of a constitutionally protected interest in an offer to re-purchase the condemned property, the Township's refusal to re-offer Neighbors the land does not "shock the conscience."   The Neighbors do not allege the Township's actions amounted to "bias against an ethnic group" or "interference with constitutionally protected activity."[90]   They instead allege the Township committed a "virtual 'taking' of property" sufficient to meet the "conscience-shocking" standard.   Neighbors rely on two cases to support their argument: *Seitz* and *Willis*.

In *Seitz v. East Nottingham Township*, Judge McHugh found the landowners adequately pleaded "conscience-shocking conduct" by alleging the government "illegally seized Plaintiffs' real property without providing just compensation.   At oral argument, Neighbors argued this case

stands for the proposition a violation of the Eminent Domain Code may "shock the conscience." But Judge McHugh's holding did not hinge on any alleged violation of the Eminent Domain Code. Rather, Judge McHugh found a virtual taking because "the facts asserted amount[ed] to a claim of an unconstitutional taking [of real property] without just compensation."[91]  Here we do not have a taking of real property without just compensation—an act expressly prohibited by the Pennsylvania and United States Constitutions. Instead, we have the Township's decision not to offer the condemnee an opportunity to repurchase condemned land for which the Township paid just compensation—an act barred by the Pennsylvania Eminent Domain Code if and only if several conditions not present here exist. As Neighbors do not plead an unconstitutional taking without just compensation, we do not find *Seitz* applicable here.

Neighbors also rely on *Willis*. In *Willis v. Carrol Township*, Judge Conner determined a landowner adequately pleaded "conscience shocking conduct" where the government, hoping to purchase the landowner's property for a low price, (1) used threats of eminent domain to prevent the landowner from selling property to a third party; (2) imposed unreasonable conditions on the landowner's property; and (3) filed an erroneous declaration of taking on the landowner's property.[92]  Judge Conner found these allegations constituted a "virtual taking" of the landowner's real property and "self-dealing" sufficient to shock the conscience. Again, Judge Connor's opinion had nothing to do with an alleged violation of the Eminent Domain Code. Rather, he found the Township's actions deprived landowner of his ability to use, enjoy or sell his property and constituted self-dealing.[93]  Here the Township has not infringed on any present ownership Neighbors have in any real property nor have they engaged in self-dealing, they simply are withholding an offer to repurchase property Neighbors no longer own. We have no basis on this pleading to find this decision "shocks the conscience."

Neighbors overlook several cases finding a violation of Pennsylvania's Eminent Domain Code does not, standing alone, shock the conscience.  For example, in *Whittaker v. County of Lawrence*, Judge Fischer dismissed a substantive due process claim challenging a condemnation even though "[t]he Commonwealth Court conclusively determined that the takings at issue in [*Whittaker*] were violative of Pennsylvania law" and the landowners alleged "the Defendants acted in bad faith by condemning their property."[94]  Judge Fischer determined allegations of a bad faith violation of state law do not, own their own, shock the conscience.  Our Court of Appeals affirmed.[95]   In *Hynoski v. Colombia County Development Authority*, Judge Brann dismissed landowners' substantive due process claims the government "used contrived evidence" to forcibly relocate them and took their property "by fraudulent and improper means."[96]  Judge Brann found these allegations did not "shock the conscience" even though the alleged conduct probably violated Pennsylvania law.[97]

Given the conduct alleged here is far less egregious than the conduct alleged in *Whittaker* and *Hyonoski*, we find the alleged conduct does not "shock the conscience."  The Township lawfully took Neighbors' property and paid just compensation for the land.[98]  A Pennsylvania court ruled the Township did not "abandon" the public purpose for which it condemned this land following days of evidentiary hearings. The Pennsylvania court found the Township had no obligation under Section 310 of the Eminent Domain Code to offer to return the property under Pennsylvania law.[99]  On these plead facts, we cannot determine the failure to return the property to Neighbors "shocks the conscience."

Neighbors fail to plead a substantive due process claim.

**D.     The Neighbors fail to plead a conspiracy to violate their due process rights.**

The Neighbors have not properly pleaded a violation of their procedural or substantive due process rights.  Absent pleading a violation, we must dismiss their conspiracy to violate claims.  To state a claim for civil conspiracy, the Neighbors must plead:  "(1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.'"[100] "Unlike in the criminal conspiracy context, where the crime lies in the agreement itself, a cause of action for civil conspiracy requires a distinct underlying tort as a predicate to liability."[101]  Where the underlying claim is properly dismissed, "the conspiracy claim must be dismissed as well."[102]  Because the Neighbors do not plead an underlying constitutional violation, they do not plead a conspiracy to violate the Due Process Clause.

Even if the Neighbors adequately plead an underlying constitutional violation, "to state a claim under § 1985(3), a plaintiff must show, among other things a conspiracy that is 'motivated by a racial or class based discriminatory animus.'"[103]  The Neighbors do not come close to such an allegation.

## III.    Conclusion

After years of township hearings and state court disputes resulting in multiple levels of judicial scrutiny, Brandywine Village Associates, L&R, and John R. Cropper now allege East Brandywine Township and its Supervisors Jay G. Fischer and Kyle Scribner deprived them of procedural due process under the Fifth Amendment and substantive due process under the Fourteenth Amendment and conspired to deprive them of these procedural and substantive due process rights.  These neighboring landowners fail to state a claim for which relief can be

granted under these theories.[104]  We dismiss their amended Complaint without prejudice if they

can plausibly plead these claims consistent with Federal Rules 8 and 11.

---

[1] ECF Doc. No. 7 (Amended Complaint) at ¶ 10.

[2] *Id.* at ¶ 12.

[3] *Id.* at ¶ 13.

[4] *Id.* at ¶ 14.

[5] *Id.* at ¶ 15-16.

[6] *Id.* at ¶ 16.

[7] *Id.* at ¶¶ 18-19.  John Cropper is a named Plaintiff as the predecessor to the Brandywine Village Associates although it is unclear his standing to challenge 2019 Township decisions.

[8] *Id.* at ¶ 25.

[9] *Id.* ¶¶ 26-27.

[10] *Id.*, at ¶ 28.

[11] *Id.* at ¶¶ 29-31.

[12] *Id.* at ¶¶ 32-33.

[13] *Id.* at ¶ 34.

[14] *Id.* at ¶¶ 34-36.

[15] *Id.* at ¶ 37.

[16] *Id.*

[17] *Id.* ("The court reversed the Township's approval on two grounds: (a) use of another landowner's property without the owner's consent, and (b) characterizing a portion of the Connector Road as a private driveway so that the Carlino plan could avoid compliance with certain zoning requirements.").

[18] *Id.* at ¶ 41.

[19] *Id.* at ¶ 45.

---

[20] ECF Doc. No. 7-4 at 2.

[21] ECF Doc. No. 7 at ¶ 47.

[22] *See Condemnation in Fee Simple Title to 0.069 Acres of Vacant Land and Certain Easements*, No. 2014-11237, 2018 WL 3213113, at *4 (Pa. Commw. Ct. 2018).  When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we may only consider the "complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  Declarations of taking, landowners' objections to a taking, and state court opinions regarding those objections constitute "matters of public record," which we can consider on a motion to dismiss.  *Hynoski v. Columbia Cty. Redevelopment Auth.*, 941 F. Supp. 2d 547, 555–56 (M.D. Pa. 2013); *see also See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 413 (3rd Cir. 1999) (taking judicial notice of an earlier court opinion as a matter of public record).  The parties rely heavily on references to the state court proceedings, which constitute matters of public record, so we consider them here.

[23] *Id.* at *4-7.

[24] *Id.* at *7.

[25] ECF Doc. No. 7, at ¶ 52.

[26] *Id.* at ¶ 60.

[27] *Id.* at ¶ 59.

[28] *Id.* at ¶ 61.

[29] *Id.* at ¶¶ 62-63.

[30] *Id.* at ¶ 65.  Neighbors allege they discovered the Township sought to delete emails and destroy hard drives and held "secret meetings" with Carlino in violation of the Pennsylvania Sunshine law.  *Id.* at ¶ 66-67.  They further allege the Board of Supervisors refused to recuse themselves from consideration of the 2018 Plan.  *Id.* at ¶ 68.  During oral argument, Neighbors made clear these allegations are plead as merely background not meant to satisfy the elements necessary for their substantive and procedural due process claims.

[31] *Id.* at ¶ 68.

[32] *Id.* at ¶ 69.

[33] *Id.* at ¶ 73.  Neighbors include allegations in their amended Complaint about a "second decision" allegedly issued two weeks after the hearing.  Neighbors made clear during oral

argument these allegations are simply background and do not provide a basis for their substantive or procedural due process claims.

[34] ECF Doc. No. 7 at ¶ 81.

[35] ECF Doc. No. 12-1 at 39.

[36] *Id.* at 3.

[37] *Id.* at 10-39. Judge Griffith further found the Township did not abuse its discretion in the 2018 Plan approval; claims about the illegality of the Memorandum of Understanding lacked merit; there is nothing illegal or improper about Supervisors Fischer's or Scribner's involvement in the approval of the 2018 Plan; the "Connector Road is intended as a public road for use by the general public and is not necessary for the development of [Carlino's] Property." The Neighbors are now appealing these decisions to the Pennsylvania Commonwealth Court.

[38] ECF Doc. No. 15. We ordered the Township file a notice of supplemental authority "attaching all statements of issues complained of on appeal filed in the Pennsylvania Commonwealth Court" and scheduled oral argument to address, among other things, the effect of the public records in the Commonwealth Court appeal upon the justiciability of the constitutional issues.

[39] *Id.*

[40] Our review of the Neighbors' amended Complaint under Rule 12(b)(6) requires we consider all "factual allegations as true, construe the complaint in the light most favorable to the plaintiff" and decide if the plaintiff has stated a claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). We emphasize a plaintiff must allege "more than labels and conclusions" and actually plead facts in their complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff fails to advance past the pleading stage if the complaint contains only a "formulaic recitation of the elements" of their claim. *Id.* The complaint need not include facts which undeniably establish the cause of action but must include "enough" to state a plausible claim for relief. *Id.* at 570. The factual allegations in the complaint must be strong enough for us to "draw a reasonable inference" the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 210.

Our Court of Appeals established a three-prong test for reviewing a complaint subject to a Rule 12(b)(6) motion. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016). We must assess the "elements" of the plaintiff's claims, discard statements which "are no more than conclusions," and take all "well-pleaded factual allegations" from the complaint as true to determine whether the plaintiff has stated a claim for relief. *Id.* at 787. Moreover, the complaint does not need to establish a "*prima facie*" case at the pleading stage. *Id.* at 789.

[41] ECF Doc No. 1. The Township moved to dismiss on July 15, 2020. ECF Doc. No. 6. Neighbors amended their complaint. ECF Doc. No. 7.

[42] ECF Doc. No. 12.

[43] To plead a *Monell* claim, a plaintiff must plead a constitutional violation.  *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  As Landowners have not pleaded a constitutional violation, their *Monell* claim necessarily fails.

[44] *Younger v. Harris*, 401 U.S. 37 (1971); *Burford v. Sun Oil Co.*, 319 U,S, 315 (1943); *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976); *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

[45] *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019).

[46] *Godfrey v. Upland Borough*, 246 F. Supp. 3d 1078, 1094 & nn.73-74 (E.D. Pa. 2017).

[47] *Ryan v. Johnson*, 115 F.3d 193, 195–96 (3d Cir. 1997) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

[48] *Id.*

[49] *Id.*

[50] *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 83 (3d Cir. 2011).

[51] *Gov't Emps. Ins. Co v. Tri Cty. Neurology & Rehab*. LLC, 721 F. App'x 118, 122 (3d Cir. 2018) (citing *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 40910 (3d Cir. 2005)).

[52] *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000).

[53] *Nat'l City Mortg. Co.*, 647 F.3d at 83.

[54] *Nicolette v. Caruso*, 315 F. Supp. 2d 710, 718 (W.D. Pa. 2003) (citing *Huffaker v. Bucks Cnty. Dist. Att'y's Off.*, 758 F. Supp. 287, 290 (E.D. Pa. 1991)).  We are aware the takings clause of the Fifth Amendment applies to state officials through the Fourteenth Amendment, but Neighbors do not plead a takings claim.  *See* ECF Doc. No. 7; ECF Doc. No. 13.

[55] *Id.* (citing *Nguyen v. U.S. Catholic Conf.*, 719 F.2d 52, 54 (3d Cir. 1983)).

[56] *Id.*

[57] *McLaughlin v. Forty Fort Borough*, 64 F. Supp. 3d 631, 639 (M.D. Pa. 2014) (citing U.S. CONST. amend. XIV, § 1).

[58] *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

59 *Westrum Land Dev. Corp. v. Whitpain Twp.*, No. 01-55355, 2002 WL 32351106, at *6 (E.D.Pa. Oct. 23, 2002) (citing *DeBlasio v. Zoning Bd., et.al.*, 53 F.3d 592, 597 (3d Cir. 1995), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 400 (3d Cir. 2003)).

60 *RLR Invs, LLC v. Town of Kearny*, 386 Fed. App'x. 84, 89 (3d Cir. 2010) (alterations in original).

61 ECF Doc. No. 13-1 at 18.  Neighbors abandoned all other potential procedural due process arguments during oral argument.

62 ECF Doc. No. 13-1 at 14-16.

63 26 Pa. Cons.Stat. § 310 (2006).

64 ECF Doc. No. 13-1 at 15.

65 *Id.* at 16.

66 *Id.* at 18.

67 *See* ECF Doc No. 7 ¶63.

68 *Id.*

69 *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

70 ECF No. 12-1 at 28 ("Appellants also claim that the Township has abandoned the purpose for which it acquired the Condemned Property.  There is no evidence to support such a claim.").

71 In their opposition, Neighbors argue "the 2014 Resolution, the August 2014 [Memorandum of Understanding] and the 2018 Plan attempt to vacate the existing public road, essential to the use of Plaintiffs' property without formal vacation proceedings."  The Neighbors appear to argue the Township must enact an ordinance and/or seek approval from the courts under the Second Class Township Code and/or the General Road Law to vacate the road.  The Neighbors then argue by "refus[ing] to seek court approval for the vacation of the road as required by statute," the Township deprived them of procedural due process.  This theory appears nowhere in the amended Complaint and Neighbors did not raise it at oral argument.  We do not consider it here.

72 *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000).

73 *Id.* at 140-41.

74 *Seitz v. East Nottingham Twp.*, No. 16-4130, 2017 WL 2264637, at *7 (E.D.Pa. May 24, 2017) (citing *United Artists Theatre Circuit, Inc.*, 316 F.3d at 400).

---

[75] *Id.*

[76] *Sutton v. Chanceford Twp.*, 763 Fed. App'x 186, 192 (3d Cir. 2019) (quoting *City of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

[77] *See United Artists Theatre Circuit, Inc.*, 316 F.3d at 400-02; *Corneal v. Jackson Twp.*, 313 F. Supp. 2d 457, 465-66 (M.D. Pa. 2003), *aff'd*, 94 F. App'x 76 (3d Cir. 2004).

[78] *Prosperi v. Twp. of Scott,* No. 06-501, 2006 WL 2583754, at *4 (W.D. Pa. Sept. 7, 2006) (citing *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 285-86 (3d Cir. 2004)).

[79] ECF Doc. No. 12-1 at 28.

[80] *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F .3d 150, 166 (3d Cir. 2010).

[81] ECF Doc. No. 12-1 at 39; ECF Doc. No. 1.

[82] *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 482 n.16 (1983).

[83] *See* ECF Doc. No. 7 at ¶ 60.

[84] *Id.* at ¶ 52.

[85] *Marin v. McClincy*, 15 F. Supp. 3d 602, 615 (W.D.Pa. 2014).

[86] *Perry v. Sindermann*, 408 U.S. 593, 603 (1972) (finding an expectancy in future employment protected by procedural due process when the expectancy based on the policies and practices of an institution); *Pratola v. Sullivan*, No. 08-2417, 2010 WL 234937, at *6 (D.N.J. Jan. 14, 2010) (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1 (1979)) (recognizing a liberty interest in the expectancy of parole release).

[87] 26 Pa. Cons.Stat. § 310 (2006).

[88] ECF Doc. No. 12-1 at 28.

[89] ECF Doc. No. 7 at 16.

[90] The Neighbors alleging the Township interfered with a constitutionally protected interest does not equate to an argument the Township interfered with a constitutionally protected activity.  *See Eichenlaub*, 385 F.3d at 285 (contrasting a substantive due process to a land use decision preventing abortion service and "a zoning controversy that does not involve allegations of hostility to constitutionally-protected activity on the premises.").

[91] *Seitz*, 2017 WL 2264637, at *7.

[92] *Willis v. Carrol Twp.*, No. 07-949, 2008 WL 644762, at *1-3, 8 (M.D.Pa. Mar. 5, 2008).

[93] *Id.*

[94] *Whittaker v. Cnty. of Lawrence*, 674 F. Supp. 2d 668, 700-01 (W.D.Pa. 2009), *aff'd* 437 Fed. App'x. 105 (3d Cir. 2011).

[95] *Whittaker v. Cnty. of Lawrence*, 437 Fed. App'x. 105, 108-09 (3d Cir. 2011).

[96] *Hynoski v. Colombia Cnty. Dev. Auth.*, 941 F. Supp. 2d 547, 565-66 (M.D.Pa. 2013).

[97] *Id.*

[98] ECF Doc. No. 7 at ¶ 60.

[99] ECF Doc. No. 12-1 at 28.

[100] *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009).

[101] *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 359–60 (E.D. Pa. 2006) (citing *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir.1999)).

[102] *Watlington on behalf of FCI Schuylkill African Am. Inmates v. Reigel*, 723 F. App'x 137, 140 (3d Cir. 2018) (citing *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d at 789 & n.7).

[103] *Id.* (citing *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)); *see also Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014).

[104] As the Neighbors fail to state a claim for which relief can be granted, we do not reach the Township's arguments on immunity, supervisory liability, attorney's fees, or damages issues.